Good morning. Judge Pryor and I have enjoyed having Judge Richard Tallman with us this week. Judge Tallman hails from the Ninth Circuit and we really appreciate him coming all the way from Coeur d'Alene, Iowa to assist us in deciding these cases this week. Thank you very much. Thanks for having me. Well, we have three cases this morning. And the first case is Otumpu Stainless versus the National Labor Relations Board. And Mr. Appleby is here for the petitioner, Ms. Sheehye for the respondent. Mr. Appleby, are you ready to proceed? Yes, sir, I am. Actually, I will pull one. You have to write it down. Thank you. Common spelling. We'll let you say it. Thank you for taking the time with us. We appreciate it very much. A little bit of background on this. This case actually emanates from a very longstanding effort by the U.S. Steelworkers Union. And the petition in this case was filed, believe it or not, in 2010. And we still haven't had an election, so it's been a little bit of a ride. This part of the ride is the settlement occurred. And I know you've seen the briefs on this, but the settlement did occur. The settlement agreement was reached. Part of that with the NLRB, as always, is that you then post a notice, which did happen. And the settlement agreement that led to the notice, there is no dispute that Otumpu didn't violate that settlement. The terms in there, there had to post this for 60 days, which they did. There are also a number of terms about things they should do, like clean up a personnel file and inform the employees of certain things. And they did all those. So there's no dispute about that. The dispute here is the question about the side letter that was posted and provided to the employees by Otumpu, which explained the situation. And the issue that now has been before you, and been before you for a while now, is before a number of organizations for a while, has been whether the side agreement somehow violated the situation such that default language in the settlement agreement should apply. Well, how is this any different from the breach of the implied covenant of good faith and fair dealing in a normal contract? In other words, a party can't engage in conduct after signing the contract that undermines performance of the contract. If there was something in the contract that would have said something about a side letter, I would agree with that. There's nothing in there. But the doctrine doesn't necessarily require specific language in the contract. It applies to misconduct by one of the contracting parties in performing its duties under the contract, which essentially amounts to an undermining or de facto violation of the contract. Isn't that what this doctrine in labor law is all about? Not to this case and not in that situation, in my opinion. And the reason I say that is because in this particular instance, what's interesting is that this Court is actually, in a sense, being asked to determine whether the side agreement, whether good faith or whether technical violation of the law, there's a lot in our brief, there's a lot in the brief about whether or not that violates the law. But don't we have to defer to the expertise of the Board? I mean, I take it it's not uncommon for employers to post side letters in labor disputes? Sure. I mean, Section 8C gives the employer the right to free speech and to educate their employees. That's what we were trying to do at the time. Well, but the Board found that it went beyond that, that it actually miscast the situation in the light most favorable to the company and sort of made the union the bad actor here in an attempt to influence the outcome of the yet to be conducted election. Let me give a context to this that's in our brief, but probably not as thorough as it is that the side letter did violate the law. And ultimately, from that perspective, the problem with that is that's now before this Court. We've argued that the side letter didn't violate the law. They argued that it did. We both have cases to support that, which is not unusual with the NLRB because the people change over time. But long story short, that shouldn't be in front of you. That should be in front of an as you say, of whether or not it's appropriate, whether or not the contract says it, whether it implies it. But the Administrative Law Judge held a hearing, right? Not on the side letter. Well, the way I read the record, the party stipulated to submit the administrative record to the judge, and then the judge made a determination in lieu of a live witness evidentiary hearing. But I'm not sure that's a distinction that makes any difference. And then the ALJ made a specific finding that this did constitute a breach, and the Board upheld that determination. So why don't we just review this as we normally would any order on a petition for review of the NLRB's decision? I think the concern is that the NLRB, whether you want to talk about the OJ or whether you want to talk about the Board itself, in a two-to-one decision, overreached. And overreached in the sense that two ways. First is that they overreached in regard to the side letter being an unlawful piece. While that was, I think you're correct, in front of the ALJ, the fact is that for reason of convenience, the parties decided to just put the facts there. And ultimately, the resolution was reached by that. We're now at this level, and after the two-to-one Board decision, it's now obviously up to you. But I hear what you're saying. And don't you agree that we apply the normal standard of review as we would on any petition for review of a Board decision? In general, yes. Whether there's truly reason here for deference, I think, can be argued over in the sense that if the NLRB goes too far, they lose that deference. And if you go back and look at... Let me see if I can... Sure. I don't know if this will clarify or confuse everybody, but with respect to the setting aside of the settlement agreement, you agree that the Board is entitled to deference on that issue, right? Because the Board was interpreting its own precedent? I agree that they're deserving of deference to that degree, yes. But I think you have a different understanding with respect to the default issue. Is that right? That's correct. And if you read, for example, and I know this is in our brief, but it's short, but if you read what the dissent says in the case before the NLRB, they say the Board has never held a side letter warrants entry of a default judgment, which precludes the respondent from raising any defenses. But how can we interpret noncompliance differently for purposes of the set-aside issue than with respect to the default issue? If there's been noncompliance, then why doesn't the default provision kick in? The default provision kicks in on things that are in the settlement agreement. And had the settlement agreement been violated, I would agree entirely with you. But the fact is, the settlement agreement wasn't violated. Well, it has to have been violated for the settlement to be set aside, doesn't it? Yes. Correct. Okay. So then if it's been violated, if there's been noncompliance with the terms of that agreement, why is default improper? Well, when we say it's been violated, we have a Board ruling that says it's been violated. But we have a dissent and we have an argument that it hasn't been violated. You can't violate something that wasn't there. And that becomes the issue. And I realize what Judge Talmadge is talking about, but the bottom line is that it wasn't in the settlement agreement. It wasn't discussed in the settlement agreement. It wasn't waived in the settlement agreement. As far as Atacumpa was concerned, they were agreeing to settle the underlying charges that existed at that time. It's okay for a company to put up a side letter. There's no question about that. And that's what we do. Well, it doesn't depend on what the side letter says, though. Sure, it does. Yeah. I mean, you would agree that if the letter contained very strong language saying we completely repudiate the settlement agreement that we've entered into and we have no intention of doing anything, that that would constitute a breach of the settlement agreement. I would agree with that. And I would agree that that would be something that we would never have done. I hope not. We're better than that, honestly. I can really tell you that. But ultimately, that's not what it looked like. It was simply a here's why this happened analysis. And that does fit right within the 8C, which gives you the right to talk to your employees. And one of the parts that really bothered me the most in this case is the NLRB's position on that, which argued that we don't have that right despite the law being what it is. And what they say, and let me see if I can find it very quickly, they say this. The company, quote, unquote, knowingly, voluntarily, and intelligently waived its First Amendment rights to post a side letter. I have no idea where that comes from. There's nothing, of any waivers, there's nothing in the agreement. There's nothing even so suggests that to where to assert that we have no right to have a First Amendment or a 8C analysis. There's nothing to support that. And ultimately, at the end of the day, there is the right to do it. And I agree with you. The right has a limitation on it, but I don't think we passed that limitation. And so from that perspective, we end up with this analysis of do we, are we really prohibited? I'm sorry. I didn't find that the side letter was an unfair labor practice, right? It merely found that the letter was a breach of the voluntary agreement. And Section 8C of the Act, the way I read it, only protects communications that state an unfair labor practice. Am I wrong about that? They're yes and no. What really that, if you look at the law relative to when you go too far, an 8C, the focus is on an unfair labor practice. But the focus is really on the question of what have you communicated? Are you threatening anybody? Are you saying things that aren't true? That's what we normally see in that type of a case. But in any event, if we look at the side letter ourselves and we come to the conclusion that the side letter blames the union for blocking the elections, we can agree with the NLRB decision. If you, if you reach an analysis, I would still argue that that's not entirely accurate in the sense that the side letter... It says the company has not been found guilty of any allegations, believes it's not violating any laws, it's nonetheless posting the letters. It doesn't seem like it's any different than side letters that the NLRB has reviewed before to find that, you know, they subvert the effects of a remedial notice on employees. If you look at the cases between the two of us that we've put out there, you can find almost any case that says almost anything about how far that goes. So therefore, in that event, we ought to give deference to the NLRB. To some degree, yes. Although they shouldn't be ignoring some of their own precedent. And I think there is a piece of that here. But if you, just let me be pragmatic for a minute, which is if you really look at that side letter, it doesn't say anything that's not true. And it doesn't say it in a way that says we disagree with this settlement. We settled it. It says that. And the reason why it was settled at that time was to try to get a vote. This wasn't done for some horrible reason. That's been two years since that petition had been filed. The company was trying to clear the path to actually have an election. All right. I have just one more question. The default judgment remedy in the settlement agreement, is that a common provision in an agreement or is it unusual? It's a really interesting question and I think I can answer it in one minute. The default didn't exist for the longest time. It was then put in by the NLRB. The NLRB now in 2017 has stepped back from that and said that that will no longer, the default, they're not using it any longer, to make a long story short. But your client agreed to it in this case. I mean, it looks harsh. It sounds harsh. But, you know, you agreed to it and you have to accept the consequences. We agreed to it except for the fact that we didn't realize that there was anything in there about a side letter at the time. And I understand what you're saying. But ultimately, they did everything the settlement specifically said they had to do. This idea that you have to infer that the settlement included things that aren't in the settlement is where I struggle with the whole situation. All right. I think we have your argument, counsel. Thank you. We'll hear from Ms. Sheehy. Good morning, Your Honors. Barbara Sheehy with the National Labor Relations Board. I don't have a lot to add. It sounds like the court has fully understood the issues. But one thing I do want to clarify, because there were a number of times where it was said, I think the court understands it, but I want it to be very clear. The board in this case did not find that the issuance of the side letter, it's posting both physically and over email, that is not an independent violation of the act. They were not. The union, to be clear, the union did file a charge in the summer after the notice posting alleging that that was a violation of the act. The region did not find merit in that charge and the union withdrew with the consent of the regional director. There is no finding in this case or prior that the side letter is a violation of the act. So we're back to my analogy to breach of the implied covenant of good faith and fair dealing, which constitutes a separate violation of the contract, but not necessarily an unfair labor practice. Absolutely. So that's what the board did here, right? They found that you didn't comply with what you said. You didn't do what you said you were going to do. So then let's look and see what we agreed to if you didn't comply. They looked at the settlement agreement. The general counsel then exercised his authority to say, listen, one of the things you agreed to was the possibility that we would seek default judgment. That's what we're doing. Not only a default judgment, but that you will have no defense on the 8A1s that were the subject of the settlement agreement. And so those are the violations that are in the order in this case. It's the original 8A1s, the threatening of the employees and the workplace violations. It's those violations that are now subject to the board's order in this case, only because the settlement agreement, having been breached, permitted the general counsel to reinstate those violations, stripped the defendant, I'm sorry, the employer agreed not to waive any defenses to those allegations, and that they would then be, and then that's the end of the story. So that's why, that's where we're at. There is no finding that the side letter violated the law. Employer is absolutely correct, 8C of the act would entitle the employer to issue this kind of communication. It's not, the board didn't find that it's unlawful of the act. What the board found was 8C notwithstanding, this isn't an unfair labor practice. What we're looking at your communication for is to determine whether that communication posted 10 days before the agreed upon board notice detracted from the efficacy of that notice. And the board, interpreting its own precedent, decided yes it does. And as Judge Pryor, and I think Judge Tallman, and perhaps even Judge Wilson highlighted, the board is entitled to significant deference on that issue, interpreting its own precedent. But with respect to the default issue, as I understand it, there is no board precedent specifically applying a provision like that, is that correct? That's correct. There isn't a case where, and it could be, employer counsel is absolutely correct. The general counsel, under General Counsel Solomon, issued a member, so the general counsel sets the prosecution priorities of the agency at any given time. So that's not an issue of giving deference to the board, applying its own precedent, is it? No, but it's applying, but it's reading the settlement agreement itself. So the default, it's not that the default is a new thing, it's that, I mean, default judgments issued by the board all the time for various reasons. This is the first time, yes, that you've had a breach of a settlement agreement that, on top of that, included default language. Employer counsel is right. It wasn't standard for board settlement agreements to have default language in them. So the fact that there isn't a case where the board is interpreting the settlement agreement to determine whether a noncompliance will have the default language kick in, it begs the question more than it stands for the proposition that this is incredibly unusual. It doesn't exist because there weren't a lot of these settlement agreements, and the board has now withdrawn, I'm sorry, the general counsel has now withdrawn that recommendation. So we don't see a lot of settlement agreements now. The regions are still entitled to seek default judgment in an agreement, in a settlement agreement, but it's no longer sort of the general practice, I guess, that you would say of the general counsel. The default issue turns on the phrase noncompliance with any of the terms of the settlement agreement. And it seems to me that under the ordinary meaning of these words, it refers to instances where there's a breach of expressed terms of the agreement. Are you arguing that it's some kind of term of art that looks back to the board precedent in which agreements have been set aside on the basis of side letters? I don't know. I don't know that the board would use the phrase term of art, but I don't know that that's different than how I would answer the question, which is, yeah, yes, I think that in this case what the board did was they looked at the agreement as a whole, and the agreement repeatedly references the side notice, I'm sorry, the board notice that will get posted. And so that to then engage in an activity where I put up the notice that we've all agreed and the region has drafted, and it's a standard notice, I've agreed to put that up, but then to turn around and post something else that completely detracts from that does violate the term that requires me to post the notice. Well, if the posting of the side letter is more akin to a breach of the duty of good faith and fair dealing, that seems to me something different than the expressed terms of the agreement. And I don't know that the board, the board certainly looks to the good faith and fair dealing as support for its position. I don't know, I don't read the board's decision as resting uniquely or even predominantly on good faith and fair dealing. They only refer to that in a footnote. The board decision itself refers more expressly to or more frequently to an express breach of a term or an express violation of the terms of the agreement. So I don't know, I don't think the board is falling back on that uniquely. I think the board is saying more definitively, this agreement required you to post a notice. When you signed that agreement, we are telling you, you had an obligation to understand the law as it stood on notices. And what you've done is you've turned a blind eye to that law and you have in effect, what you've done is effectively not posted the notice. By posting the side notice, the board is saying you have detracted sufficiently enough from the actual notice that you agreed to post such that you didn't, it was as if you didn't post in any event. So it's not, so, and then I think, like I said, in the footnote, I think the board says in any event, let's not forget that the parties can't enter into an agreement and then deliberately engage in conduct that undermines that agreement. But I don't think the board, I don't think a fair reading of the decision is that the board is relying uniquely on that covenant of good faith and fair dealing. I think they're relying on the terms of the settlement agreement that they're interpreting to say noncompliance with the term triggers the default. And we find that your side notice, side letter, violated the term of the agreement that required you to post the notice. Why is it fair for the NLRB to impute knowledge of all National Labor Relations Board case law to companies that enter into settlement agreements? Why is that fair? You know, I'm not, I don't know that, I don't know if, I don't know that the board would always say we're requiring all terms, you have to understand, but I'm saying in this particular case. He says there's law that goes both ways. Gould, respective, the board affirmatively disagrees with that. Gould is, has been around since 1980. And three, two other cases have been around for about the same amount of time, Arrows Specialties and News Texan, both of which let the employer know this kind of side letter where you blame the union, where you gloss over your other remedies, where you distribute it well in advance. This one was done 10 days in advance, so you've influenced the employees. So it's not that the board is requiring that the employer understand all aspects of labor law. What they're requiring is that you understand what your obligation is to post a notice. And that obligation is a meaningful notice. And the board found that given the case law for the past 40 odd years, some of it half a century, that you have, that you didn't live up to your end of the bargain, which was to post a notice and nothing else that detracts from that notice. I don't think I have anything else to add, unless there are any other questions. I think I've... I don't have anything. I think we have your argument. Thank you, counsel. Thank you. Mr. Appleby, you reserve some time for rebuttal. Yes, sir. And just a couple of pieces to respond. The statements, you didn't do what you said you would do, that isn't an accurate statement. What the company did was respond, there were five or six requirements in the settlement agreement. There's no question all were complied with. What we're now dealing with is violation of agreement based on something that wasn't in the agreement. And I understand what you're coming from in the sense of the covenant of good faith and fair dealing. But the reality is that it was never discussed. It was never laid out. We were never told not to do that. If you look at the law, it says you can provide a side letter. There's no prohibition on that. There's prohibitions of what can go into the side letter. But effectively, what we're being accused of is violating the agreement by putting up a side letter that was never discussed and never part of the settlement agreement. That's the struggle in this case. The company did it in good faith. There's been no allegation otherwise. Understood that there is one day this thing will be solved. This whole petition is the longest one I've ever seen. Since 2010, you would think we'd have a vote by now. But the reality is it's been difficult because of this particular situation. So we'll see where it goes. But the reality is that we were obliged to post a notice. We weren't said anything else. And to go back to the default agreement for just a very quick couple seconds, at that particular time, it was very difficult to get a settlement agreement from the NLRB without agreeing to the default agreement. That's now changed and for very good reasons because I think that keeps settlements from happening. And I'm delighted as an employment lawyer that it has changed. But at the time, if you were going to get this sort of thing dealt with and settled, you played the game and that's what you had to do. So, all right. Thank you, counsel. Thank you for taking your time. Thank you. The next case is Jamil Alamin.